UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 21-98 |
| SHIVA AKULA | SECTION I |

### ORDER & REASONS

Before the Court are *pro se* defendant Shiva Akula's ("Akula") motion[1] and amended motion[2] to disqualify Assistant United States Attorney ("AUSA") Kathryn McHugh ("McHugh"). The government opposes the motions.[3] For the reasons below, the Court denies the motions.

### I.   FACTUAL BACKGROUND

Akula is charged with 23 counts of health care fraud in violation of 18 U.S.C. § 1347.[4] Akula was previously represented by counsel, but is now proceeding *pro se*, though standby counsel has been appointed.[5] In the instant motion, Akula argues that McHugh should "be recused, disqualified, and prevented from any further

---

[1] R. Doc. No. 164.
[2] R. Doc. No. 167. Akula filed these two separate motions to disqualify McHugh within as many days. Akula has not withdrawn the first motion, which requests the same relief as the amended motion, and makes identical arguments. The original motion contains seven exhibits while the amended motion contains ten. Because the arguments made in the motions are substantively identical, the Court will cite to the memorandum and exhibits filed in connection with the amended motion. However, the reasons for denial expressed in this opinion apply equally to both motions.
[3] R. Doc. Nos. 192, 222.
[4] *See generally* R. Doc. No. 1.
[5] *See* R. Doc. Nos. 115, 120.

1

investigation or prosecution involving this matter" due to "[a] pattern of prosecutorial misconduct."[6]

Much of Akula's motion relates to the involvement of an organization called Physicians Against Abuse ("PAA") and PAA member Dr. Christina Black ("Black"). Akula describes PAA as "a physician advocacy group."[7] He states that he previously "authorized PAA to contact McHugh so that a meeting between Dr. Akula and PAA [could] occur in which explanations and clarifications could be provided to the government regarding numerous misconceptions by McHugh."[8] Akula states that "McHugh did not respond to PAA's outreach efforts" and that within "a few days of the attempt to set up a meeting," McHugh "filed her indictment against Dr. Akula."[9]

Shortly thereafter, the government issued a press release regarding the indictment.[10] Akula states that "PAA responded in kind and drafted its [p]ress [r]elease," which, "[a]lthough it never made it to the media, [ ] was highly critical of McHugh."[11] The PAA press release alleged that the government's case against Akula "relied on a disgruntled former employee of Dr. Akula . . . to make false accusations against Dr. Akula."[12] The press release identified that employee by name and alleged that her "employment rap sheet . . . is a mile long."[13]

---

[6] R. Doc. No. 167, at 1. Though there are two government attorneys prosecuting this matter, Akula's motion focuses exclusively on McHugh.
[7] *Id.* at 5.
[8] *Id.* at 6.
[9] *Id.*
[10] R. Doc. No. 167-5.
[11] R. Doc. No. 167, at 6; R. Doc. No. 167-1 (PAA's press release).
[12] R. Doc. No. 167-1, at 2.
[13] *Id.*

2

The government thereafter issued subpoenas to PAA and Black, due to its "concern that [they] engaged in witness tampering and/or obstruction of justice by issuing their press release."[14] *In re Grand Jury Subpoena*, 56 F.4th 395, 397 (5th Cir. 2022). PAA and Black moved to quash the subpoenas. "The district court heard oral argument, reviewed *in camera* Dr. Akula's retainer agreement with PAA, and met *ex parte* with the AUSA to inquire about the purpose of the grand jury investigation[.]" *Id.* at 398. "Ultimately, the district court granted the government's motion to compel Black's compliance and denied Black and PAA's motions to quash and to disqualify the AUSA." *Id.* PAA and Black then filed a motion for clarification of the order to comply with the subpoenas, alleging that "they had identified hundreds of [subpoenaed] documents protected by attorney-client privilege because the documents consisted of communications between Dr. Akula and his counsel." *Id.* "Before the court ruled on the clarification motion and without complying with the subpoena, PAA and Black filed a notice of appeal from the court's denial of their motion to quash the two subpoenas and the order compelling Black's compliance." *Id.* The Fifth Circuit ultimately dismissed that appeal for lack of jurisdiction. *Id.* at 399.

In the instant motion, Akula alleges that McHugh has developed a disqualifying personal interest in the prosecution of this matter due to PAA's press release, that the government has illegally obtained certain documents through the

---

[14] Black submitted an affidavit in connection with the instant motion, R. Doc. No. 167-6, and also mailed copies of the grand jury subpoenas to the chambers of the undersigned. The affidavit attempts to undercut the government's allegations of witness tampering, which are not at issue in Akula's criminal prosecution.

3

use of a "mole" within Akula's hospice care business, and that the government has improperly refused to disclose witness statements. Throughout the motion, Akula also alleges that McHugh has made various misrepresentations to the Court.

## II.  STANDARD OF LAW

Motions for disqualification of counsel "'are governed by state and national ethical standards adopted by the court.'" *United States v. Nunez*, No. 14-284, 2015 WL 5838210, at *1 (E.D. La. Oct. 7, 2015) (Milazzo, J.) (quoting *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001)). "These rules apply in disqualification motions brought in criminal as well as civil cases." *United States v. DeCay*, 406 F. Supp. 2d 679, 683 (E.D. La. 2005) (Barbier, J.) (citation omitted). "District courts [within the Fifth Circuit] faced with a motion to disqualify [counsel] must apply the ethical standards of the district court, the state in which the district court sits, and the national standards adopted by the Fifth Circuit." *Nunez*, 2015 WL 5838210, at *1 (citing *Horaist*, 255 F.3d at 266). This court has adopted the Louisiana Rules of Professional Conduct of the Supreme Court of the State of Louisiana. LRD 1.2.

When considering a disqualification motion, courts may consider "'(1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) [whether] the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case.'" *United States v. Beaulieu*, No. 18-108, 2018 WL 6390524, at *8 (E.D. La. Dec. 5, 2018) (Brown, J.) (quoting *In re Dresser Indus.*, 972 F.2d 540,

4

543 (5th Cir. 1992)). "Disqualification of counsel cannot and should not be based on [ ] speculation." *Lifestyles Unlimited, Inc. v. Davis*, No. 18-2233, 2020 WL 12788263, at *2 (S.D. Tex. Sept. 8, 2020) (citation omitted).

"The disqualification of Government counsel is a 'drastic measure and a court should hesitate to impose it except where necessary.'" *United States v. Maike*, No. 17-12, 2017 WL 3495916, at *2 (W.D. Ky. Aug. 15, 2017) (quoting *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003) (further citations omitted). Courts have disqualified AUSAs in "limited circumstance," including, for example, "'where an appointed prosecutor represents multiple parties in a case [or] where a prosecutor plans to testify as a witness at the defendant's trial.'" *Id.* (quoting *United States v. Zamichieli*, No. 12-182, 2015 WL 3668147, at *10 (E.D. Pa. June 15, 2015) (further citations omitted)). Courts considering a motion to disqualify a prosecutor must "appropriately balance proper considerations of judicial administration against the United States' right to prosecute the matter through counsel of its choice." *United States v. Whittaker*, 268 F.3d 185, 193–94 (3d Cir. 2001) (citation omitted).

### III.  DISCUSSION

Akula makes several arguments as to why McHugh should be disqualified: (1) that she "developed a disqualifying personal agenda from very early on after PAA's [p]ress release that was highly critical of McHugh,"[15] (2) that she "illegally orchestrated the removal of Dr. Akula's personal notes through the use of a 'mole' after the filing of the indictment,"[16] and (3) that she "intentionally and blanketly

---

[15] R. Doc. No. 167, at 14.
[16] *Id.* at 16.

mischaracterized all witness statements as Jencks material."[17] He also accuses her of making misrepresentations to the Court on various occasions.

### a. Alleged Personal Agenda

Akula alleges that "[a]nyone who conducts just a cursory review of this case since its inception will readily see that McHugh became obsessed with PAA and Dr. Black after [PAA's] [p]ress [r]elease and vowed to either criminally prosecute PAA and Dr. Black or to drive them away from Dr. Akula."[18] In support of this contention, he cites a portion of the government's opposition to Akula's motion to disqualify the undersigned judge in which the government discussed the involvement of PAA and Black in this matter. The Court fails to see how the government's attempt to provide factual background demonstrates an "obsession" with either PAA or Black, much less an inappropriate personal interest on the part of McHugh. He cites no other portion of the record to support the idea that McHugh has an inappropriate personal interest in this matter. As to this argument, therefore, Akula has failed to point to any impropriety that might outweigh the government's "right to prosecute the matter through counsel of its choice." *Whittaker*, 268 F.3d at 193–94.

### b. Alleged Use of a "Mole"

Akula accuses McHugh of "directing one of Dr. Akula's employees to retrieve information from Canon Hospice [Akula's hospice care business] by stealing information and providing it to McHugh illegally, without authority of a search

---

[17] *Id.* at 18.
[18] *Id.* at 15.

warrant."[19] Akula alleges that this happened twice: first in August of 2021, when the PAA press release "was delivered to McHugh"; and second on March 7, 2023, when, while reviewing discovery, "Akula uncovered his own personal handwritten notes, that also appear to have been [seized] illegally and without the authority of a search warrant."[20]

As to the press release, Akula states that it "never made it to the media" and that it "was only provided internally to a single Canon Hospice employee."[21] The government does not explain how it obtained the press release. However, the Court notes that the PAA press release was discussed in the Fifth Circuit opinion regarding the grand jury witness tampering investigation, and it does not appear that any party in that proceeding objected that the press release was illegally seized. It is hard to see how Akula could be prejudiced by the disclosure of a press release, which was presumably intended to be released to the public. Even if it is true that the press release was never released to the media, it does not appear to contain any privileged or protected information. And Akula himself admits that the press release was provided to a Canon Hospice employee. Akula therefore provides no evidence in support of the contention that the government engaged in improper or illegal conduct in obtaining the press release.

As to the allegation regarding the handwritten notes, Akula states that he discovered the notes "when he opened one of the folders in the thumb drive that was

---

[19] *Id.* at 1.
[20] *Id.* at 2.
[21] *Id.* at 6.

7

provided by [standby counsel]."[22] As was discussed at an in-person status conference, Akula's former counsel agreed to provide Akula's standby counsel with the discovery files, and standby counsel agreed to provide those to Akula.[23] As Akula recognizes,[24] the pages on which the handwritten notes appear are not Bates stamped. The government states that this means that "they were not processed by the government or produced in discovery by the government to Akula's previous attorneys" and that "[t]he government had not seen these notes and was not aware of them until Akula attached them to the instant motion."[25] The government further states that they conferred with Akula's former counsel, who "stated that there was an explanation for how the notes came to be part of the file Akula's former counsel provided to Akula," but "[t]he government did not press the issue further in the event the explanation implicated attorney-client communications."[26]

Akula's only evidence for the contention that the government has used a "mole" to improperly obtain evidence, therefore, is the government's possession of (1) a press release that Akula admits was distributed to an unidentified employee of his healthcare business, and (2) a non-Bates-stamped document that Akula obtained from his own former counsel, by way of standby counsel. Akula presents no actual

---

[22] *Id.* at 17.
[23] R. Doc. No. 150, at 33:5–:11 (Akula's former counsel agreeing to send the files to then-standby counsel); R. Doc. No. 158, at 7:18–8:15 (current standby counsel confirming that he had received the discovery from Akula's former counsel and delivered a thumb drive containing those files to Akula).
[24] R. Doc. No. 167, at 17–18.
[25] R. Doc. No 192, at 5.
[26] *Id.* at 6.

evidence of misconduct by the government, and his speculation that these documents were obtained illegally does not warrant disqualification of McHugh. *Lifestyles Unlimited, Inc.*, 2020 WL 12788263, at *2.

### c. Jencks Act Disclosure

Akula argues that McHugh has "illegally withheld witness statements in connection with the allegations in the indictment."[27] He further alleges that McHugh made false representations by saying that all discovery had been disclosed while "conveniently le[aving] out the fact that she was blanketly withholding every single witness statement until five days before trial."[28] He alleges that the government is improperly characterizing the witness statements in this matter as Jencks Act material. Because the Court has addressed the Jencks Act issue in a separate order and reasons,[29] it will not do so in full here. The Court only notes that Akula does not explain why he believes the witness statements to which he refers would not fall under the statute's purview. He argues that this case does not implicate national security or the safety of witnesses, but neither of those considerations appear in the statutory text. Akula has therefore pointed to no government misconduct in this arena and fails to identify a basis for disqualification of counsel.

### d. Miscellaneous Accusations of Misrepresentations

Throughout the motion, Akula also accuses McHugh of making misrepresentations to the Court. Because the government did not address these

---

[27] R. Doc. No. 167, at 18.
[28] *Id.* at 11 (emphasis omitted).
[29] R. Doc. No. 207, at 2–7.

9

allegations in its original briefing on the motion to disqualify, the Court ordered additional briefing with regard to these issues, and granted Akula leave to file an additional response in support of his motion.[30]

### i. *Grand Jury Subpoenas*

Akula argues that "McHugh disguised her grand jury subpoenas [to Black and PAA] under 'witness tampering' just so that she could get [the judge presiding over the grand jury proceedings] to authorize the subpoenas to go through."[31] Akula appears to believe that the grand jury subpoenas were in fact an effort to investigate Akula rather than PAA and Black, a contention that the district judge presiding over the grand jury proceedings rejected. *In re Grand Jury Subpoena*, 56 F.4th at 398 (noting that "the AUSA assured the [district] court the subpoenas were issued for the witness-tampering investigation, not to investigate Dr. Akula," and that the district court ultimately ordered PAA and Black to comply with the subpoenas).

Akula argues that McHugh's alleged lies in the grand jury proceedings were "obvious," but the judge "did not see through" them because "McHugh was such a good liar."[32] Akula argues there could not have been witness tampering on the date the grand jury subpoenas were issued because "the indictment had just been filed . . . merely one week prior, and McHugh had not yet released the names or identified any of the government's witnesses."[33] However, Akula's argument is undermined by the fact that PAA's press release identified a Canon Hospice employee

---

[30] R. Doc. Nos. 211, 215.
[31] R. Doc. No. 167, at 15.
[32] *Id.*
[33] *Id.*

10

by name, called that employee a "whistleblower" and alleged that the charges against Akula were based on that employee's statements.[34] On its face, the press release makes clear that PAA was aware that that employee might provide testimony against Akula, regardless of the fact that the government had not confirmed that this employee might be a witness in this matter. Akula has therefore not presented any evidence suggesting that McHugh lied in connection with the grand jury proceedings, nor that the district court's conclusion that the subpoenas were appropriate was incorrect.[35]

## ii. Protective Order Proceedings

Akula further alleges that "McHugh also launched a full[-]blown smear campaign against Dr. Black once McHugh realized that Dr. Black and PAA offered substantial valuable resources for Dr. Akula."[36] Akula alleges that "McHugh launched relentless personal attacks against" PAA and its members, and that she "used these personal attacks to justify her goal of precluding PAA and Dr. Black from having access to Akula's discovery."[37]

---

[34] R. Doc. No. 167-1, at 2.
[35] In his supplemental opposition, Akula asserts that, during proceedings before the magistrate judge, the magistrate judge "noted [that] the real reason behind McHugh pursuing these 'grand jury subpoenas' was the critical comments that were lodged against McHugh herself in this press release." R. Doc. No. 227, at 5. Akula cites no portion of the record in support of this statement. As will be discussed below, the magistrate judge did criticize McHugh for certain conduct occurring before the magistrate judge. However, the Court has identified no portion of the record where the magistrate judge stated that McHugh had an improper motive for pursuing the grand jury subpoenas.
[36] R. Doc. No. 167, at 7.
[37] Id. at 8.

11

Akula notes that the government previously sought a protective order in this matter. That motion was referred to the U.S. Magistrate Judge assigned to this case. The proceedings focused on whether Black and PAA counsel Sebastian Ohanion ("Ohanion"), should be given access to the discovery in this matter.[38] In connection with those proceedings, the magistrate judge chastised both McHugh and Akula's then-counsel[39] for their "lack of transparency," noting that Akula's then-counsel initially failed to inform the magistrate judge "that she was retained by PAA to represent Dr. Akula," and that neither counsel initially informed the court that Black and Ohanion were affiliated with PAA, nor about the nature of Black's and Ohanion's involvement in the case as consultants.[40] The magistrate judge also criticized McHugh for calling the magistrate judge's chambers to "suggest[ ] that the [magistrate judge] speak to [a] district judge in the [district] regarding" unspecified information related to the protective order proceedings.[41] The magistrate judge deemed McHugh's call "inappropriate, and a possible attempt to have an *ex parte* communication with the Court."[42] The magistrate judge did not respond to McHugh's phone call or take the suggested action. In the order and reasons regarding the protective order, the magistrate judge warned "both counsel to perform in a manner

---

[38] *See generally* R. Doc. No. 66.
[39] Akula's counsel at the time of the protective order proceedings was a different attorney than the one who provided the discovery to Akula when Akula began proceeding *pro se*.
[40] R. Doc. No. 66, at 6–8.
[41] *Id.* at 6.
[42] *Id.*

12

consistent with" the applicable rules of professional conduct.[43] Akula alleges that McHugh's conduct before the magistrate judge "would have called for permanent removal of any prosecutor in most" U.S. Attorney's offices."[44]

The magistrate judge before whom the relevant conduct took place saw fit only to issue a warning to McHugh (as well as to Akula's then-counsel) regarding the above-described behavior. Additionally, the Louisiana Attorney Disciplinary Board dismissed a complaint filed against McHugh by Black in connection with those proceedings.[45] Akula presents no evidence that he was prejudiced by McHugh's behavior, and it is not clear how he could be, as the magistrate judge did not accept McHugh's invitation to participate in an *ex parte* communication. Therefore, balancing the "proper considerations of judicial administration against the United States' right to prosecute the matter through counsel of its choice," the Court concludes that this incident does not warrant disqualification of McHugh. *Whittaker*, 268 F.3d at 193–94.[46]

---

[43] *Id.* at 13.
[44] R. Doc. No. 167, at 9. Akula fails to explain the underlying basis for this claim.
[45] R. Doc. No. 222-1.
[46] In his supplemental opposition, Akula argues that the proceedings regarding the protective order were improper because the magistrate judge incorrectly found that "the advocacy group [PAA] retain[ed] [Akula's] then-counsel" when in fact "[t]hen counsel was retained by Dr. Akula," and that McHugh knew the magistrate judge's impression was false but failed to correct it. R. Doc. No. 227, at 6–7. The magistrate judge's order states that "Dr. Akula's counsel, Ms. Conner, disclosed [to the magistrate judge] that she was retained by PAA to represent Dr. Akula." R. Doc. No. 66, at 7. It is not clear why McHugh would have any basis to question the representation of Akula's own counsel regarding the terms of her representation, and Akula has provided no evidence to support the assertion that McHugh made any false representations in this regard.

### iii. First Appearance Hearing

Akula also alleges that McHugh also made a false representation during Akula's first appearance hearing, wherein she allegedly stated that a relative of Akula's fled the country. Akula alleges that this relative "not only had never fled the country, but he could not even get out of bed due to an illness."[47] Akula insists that McHugh knew that she was presenting a falsity to the magistrate judge when she made this statement. The only evidence Akula presents in support of this contention is an affidavit by Black submitted in connection with this motion, wherein Black states that when she "talked to the daughter [of the relative], [Black] learned that [the relative] had been bed bound due to an illness."[48]

In its supplemental response, the government states that, prior to the first appearance hearing, "the government had been unable to locate Akula's relative, who worked at Akula's company, Canon Hospice, and was a witness to the [alleged] fraudulent conduct ultimately charged in the indictment."[49] The government also attached flight records to its supplemental response, which show that the relative flew from the United States to Doha, Qatar in May of 2018 and returned in July of 2019; then flew to Delhi, India in October of 2019 and returned in January of 2021; and then again flew to Delhi in August of 2021, shortly after Akula was indicted,[50] and returned to the United States in October of 2022.[51]

---

[47] R. Doc. No. 167, at 10.
[48] R. Doc. No. 167-6, ¶ 14.
[49] R. Doc. No. 222, at 3.
[50] *See* R. Doc. No. 1 (indictment dated August 5, 2021).
[51] R. Doc. No. 218-1, at 1.

In his supplemental response, Akula argues that these flight records do not show that the relative "fled the country," but only that he "is an individual who make[s] annual and sometimes even bi-annual travel to his home country."[52] He argues that the government's statement at the first appearance hearing on August 25, 2021 was false because the relative "was scheduled to return to the United States" from India three days later. The flight records, however, show that the relative *left* the United States on August 28, 2021.[53] In any event, the government did not oppose Akula being released on bond at the hearing, and Akula was released on his own recognizance.[54]

Akula further argues that "McHugh is confused" because "[t]here were two hearings."[55] Akula references the fact that, in November of 2021, Akula sought a modification to his bond conditions in order to allow him to attend the burial of his mother in India. The government opposed that request, which was ultimately denied. Akula argues that, at that hearing, "McHugh continued to insinuate the same falsities when she knew full well that this relative had returned to the United States and was in the United States at the time of this hearing."[56] As stated above, however, the flight records indicate that the relative left the United States in August of 2021 and did not return until October of 2022.

---

[52] R. Doc. No. 227, at 1.
[53] R. Doc. No. 218-1, at 1.
[54] R. Doc. No. 12.
[55] *Id.*
[56] R. Doc. No. 227, at 2.

In light of the foregoing, Akula has not presented any evidence that McHugh made any knowing misrepresentations during either of the bond hearings. In fact, the flight records for the relative—the accuracy of which Akula does not contest— undermine Akula's original contention that this relative was bed bound and unable to leave the country at the relevant times. Accordingly, Akula's allegations fail to provide a reason to require the disqualification of McHugh and fall woefully short of demonstrating any knowing misrepresentations by her.

\* \* \*

Akula has requested an evidentiary hearing in connection with the allegations he makes against McHugh. In its discretion, the Court finds that such a hearing is not necessary. *See United States ex rel. Holmes v. Northrop Grumman Corp.*, 642 F. App'x 373, 379 (5th Cir. 2016) (per curiam) (unpublished) (reviewing district court's denial of an evidentiary hearing in connection with a motion to disqualify counsel for abuse of discretion); *United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 34–35 (D.D.C. Apr. 6, 2004) (collecting cases supporting the proposition that evidentiary hearings are not required in connection with motions to disqualify counsel so long as the court has an evidentiary record sufficient for later appellate review). Akula has presented no credible evidence in support of his arguments that McHugh should be disqualified from prosecuting this matter, and there is no indication that an evidentiary hearing would reveal any such evidence. Accordingly, Akula's request for an evidentiary hearing is denied.

### IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Akula's motion[57] and amended motion[58] for disqualification of counsel, as well as his related request for an evidentiary hearing, are **DENIED**.

New Orleans, Louisiana, May 24, 2023.

*[signature]*

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[57] R. Doc. No. 164.
[58] R. Doc. No. 167.

17