UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 21-98** |
| **SHIVA AKULA** | **SECTION I** |

### ORDER & REASONS

Before the Court is additional briefing[1] by defendant Shiva Akula ("Akula") pertaining to the government's motion *in limine* and notice of intent to use evidence pursuant to Federal Rule of Evidence 404(b). The government filed replies to Akula's briefing.[2] For the reasons that follow, the Court alters in part its prior order regarding the government's motion *in limine*, orders Akula to provide notice of any planned advice-of-counsel defense, and defers decision as to the government's proposed Rule 404(b) evidence.

### I. FACTUAL BACKGROUND

Akula is charged with 23 counts of health care fraud in violation of 18 U.S.C. § 1347.[3] From February 2023 to June 2023, Akula represented himself in connection with these proceedings.[4] On June 23, 2023, Akula filed a motion to enroll counsel.[5] The Court granted that motion and, after briefing, granted Akula's motion to continue

---

[1] R. Doc. Nos. 295 (opposition to motion *in limine*), 296 (opposition to 404(b) notice).
[2] R. Doc. Nos. 297, 298.
[3] *See generally* R. Doc. No. 1.
[4] *See* R. Doc. Nos. 120, 273.
[5] R. Doc. No. 264.

1

the trial, which was previously set to begin on July 10, 2023.[6] The trial is now set for October 30, 2023.[7]

The Court previously set a briefing schedule for motions *in limine* and Rule 404(b) issues. Akula, who was proceeding *pro se* at the time, missed the deadline to file oppositions to the government's filings.[8] The Court granted in part and deferred in part the government's motion *in limine* and took no action on the 404(b) filing.[9] When the Court continued the trial, it granted Akula's newly enrolled counsel permission to file oppositions to both the government's motion *in limine* and the Rule 404(b) notice.[10]

In the instant briefing, Akula offers arguments as to only certain portions of the government's motion *in limine*, addressed below, and states that he agrees with the unaddressed portions.[11] He opposes the Rule 404(b) filing in full.[12]

## II. LAW & ANALYSIS

### a. Motion *in limine*

In its order and reasons, the Court granted the government's motion to the extent that it sought to exclude "evidence and argument suggesting civil or administrative punishment might be more appropriate than criminal prosecution," finding that "such evidence invites jury nullification."[13] Akula now "submits that he

---

[6] R. Doc. No. 292.
[7] R. Doc. No. 293.
[8] *See* R. Doc. No. 271.
[9] *Id.*
[10] R. Doc. No. 293.
[11] R. Doc. No. 295, at 1.
[12] R. Doc. No. 296.
[13] R. Doc. No. 271, at 3.

2

has no intention of suggesting a civil or administrative action would be more appropriate [than criminal charges]" but argues that he "should not be precluded from stressing the significant burden of proof in a criminal trial as compared to a civil trial."[14] He "requests that the Court refrain from ordering a complete bar to mention of civil or administrative action,"[15] but, as the government points out, the Court's order and reasons does not preclude Akula from emphasizing the government's burden of proof in a criminal case, and if there are additional reasons for permitting such evidence, counsel may approach the bench at trial and request permission to do so. The government's motion only requested that Akula be excluded from suggesting that civil punishment is more appropriate than criminal prosecution, and Akula apparently does not take issue with that restriction. Accordingly, the Court will not alter its order in this respect.

The Court previously granted the government's motion to the extent it sought to exclude evidence of good deeds, specifically evidence that Akula treated patients during the COVID-19 pandemic and benefited the community through his nonprofit foundation.[16] In doing so, the Court noted that "[a] defendant may only present evidence of specific instances of conduct when his character or character trait is an essential element of a charge, claim or defense."[17] Akula does not dispute this conclusion, and agrees that his "character is not an essential element of the charges

---

[14] R. Doc. No. 295, at 3.
[15] *Id.*
[16] R. Doc. No. 271, at 3–4.
[17] *Id.* at 4 (cleaned up) (quotations and citation omitted).

3

here," but nevertheless argues that "it is possible that evidence of specific acts may become relevant and admissible as part of [his] defense."[18] He therefore requests that the Court reserve ruling on this issue, and states that counsel will approach the bench before presenting such evidence.[19] Because Akula appears to agree with the Court's legal conclusion on this issue, it is not clear to the Court why it should alter its previous order. Accordingly, the Court's order will remain unchanged. However, should Akula believe that a particular piece of such evidence is relevant and admissible, counsel may approach the bench for permission to introduce it at trial.

The Court granted the government's motion to the extent that it sought to exclude testimony regarding Akula's "own self-serving statements made to law enforcement agents, government investigators, or other witnesses."[20] Though the Court granted the motion in this respect, it also noted that "should there be an evidentiary basis for admission of such statements, counsel may approach the bench and seek court approval for the same at trial."[21] Akula now argues that the "Court should reserve ruling with respect to any purportedly inadmissible hearsay statements,"[22] though he does not dispute the Court's conclusion that self-serving hearsay statements are generally inadmissible. Because the Court has already indicated that the parties may approach the bench to obtain permission to introduce

---

[18] R. Doc. No. 295, at 4.
[19] *Id.*
[20] R. Doc. No. 271, at 4 (quotation and citation omitted).
[21] *Id.* at 5.
[22] R. Doc. No. 295, at 4.

4

such statements if there is a basis for doing so, the Court need not revise its previous order.

The Court previously deferred the government's motion to the extent it sought to prohibit Akula from introducing interview reports prepared by law enforcement agents for the purpose of impeaching government witnesses.[23] The Court deferred this portion of the motion because it was not presented with arguments as to any specific witness statements. Akula now argues that "[t]o the extent interview reports prepared by law enforcement officers contain substantially verbatim recitals of witness statements or are otherwise adopted by the witness, [he] should be permitted to use those statements for prior inconsistent statement impeachment and in general for other permissible purposes."[24] However, the Court still has not been presented with any arguments as to any specific witness statements, and need not alter its previous order deferring this portion of the government's motion.

The Court previously granted the government's motion to the extent that it sought to exclude arguments suggesting selective prosecution.[25] Akula "agrees that trial is not the avenue by which to raise a claim of selective prosecution," but argues that "he should not be generally barred from asserting claims of being 'singled out' as such claims pertain to motives or credibility of individual witnesses."[26] However, as the government points out, the Court's previous order does not prevent Akula from

---

[23] R. Doc. No. 271, at 5.
[24] R. Doc. No. 295, at 5.
[25] R. Doc. No. 271, at 6.
[26] R. Doc. No. 295, at 6.

cross-examining witnesses regarding bias. Accordingly, the Court need not alter its order in this respect.

The Court previously deferred the government's motion to the extent it sought to exclude "evidence or argument that Medicare or other entities that monitored Canon were negligent with regard to their monitoring or discovery of alleged fraud."[27] The Court noted that "[a] victim's negligence is not a defense to criminal conduct," but deferred ruling on the issue "to allow the parties to provide further context."[28] Akula now argues that "his reliance on the negligence of Medicare or other related parties may be relevant to negate willfulness" and evidence of negligence should be admissible for that purpose.[29] Akula's only authority for this assertion is the general definition of willfulness. Because the Court previously deferred this portion of the government's motion, and Akula's briefing does not clearly show how such evidence might be admissible, the Court will not alter its previous order.

The Court previously granted the government's motion to the extent it sought to preclude Akula from raising the defense of advice of counsel.[30] The Court noted that "[c]ourts have discretion to order pretrial notice of an advice-of-counsel defense" but that such notice had not been ordered in this case. *United States v. Hagen*, 485 F. Supp. 3d 737, 813–14 (N.D. Tex. 2020) Because Akula had not indicated that he planned to raise the issue and had not identified any evidence to support its

---

[27] R. Doc. No. 271, at 6.
[28] *Id.* at 6–7.
[29] R. Doc. No. 295, at 7.
[30] R. Doc. No. 271, at 12.

application, the Court granted the motion in this respect as unopposed.[31] Akula now argues that he "should be permitted to offer evidence as to advice of counsel to negate the willfulness element of these charges and is not barred from doing so by any notice provision."[32] He requests that the Court either deny the government's motion in this respect or reserve ruling on the issue pending further briefing.[33] The government requests that the Court order Akula to provide notice of his intention to raise the defense prior to trial.[34] The Court has inadequate information to make a ruling on the issue at this time, and will therefore order Akula to provide notice of any planned advice-of-counsel defense by August 18, 2023, and will order additional briefing, if appropriate, prior to trial. The Court will accordingly alter its order on the motion *in limine* to defer ruling on the issue.

### b. Rule 404(b) Evidence

In its notice of intent to use evidence pursuant to Rule 404(b), the government stated that it intends to introduce two categories of evidence at trial: evidence related to Medicare investigations and audits of Canon beginning in December of 2014 and continuing through 2017, as well as evidence related to alleged "post-indictment bullying of witnesses."[35] Akula has now objected to both categories.

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on

---

[31] *Id.*
[32] R. Doc. No. 295, at 8.
[33] *Id.* at 9.
[34] R. Doc. No. 297, at 9.
[35] R. Doc. No. 243.

7

a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2).

In order to determine whether "other acts" evidence is admissible, the Court must first determine whether the evidence is intrinsic or extrinsic to the charged crime. *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1999). "Other act" evidence is intrinsic when the evidence of the other act and evidence of the crime charged are "inextricably intertwined," or the other acts are part of a "single criminal episode" or were "necessary preliminaries" to the crime charged. *Id.* (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)).

If the "other acts" evidence is extrinsic, the evidence may nevertheless be admissible pursuant to Rule 404(b). In *United States v. Beechum*, the Fifth Circuit outlined a two-step test to determine the admissibility of extrinsic evidence or "other acts." 582 F.2d 898, 910 (5th Cir. 1978). "Other acts" include both criminal and noncriminal activity. *Id.* at 914 n.17. "Under *Beechum*, evidence of extrinsic offenses is admissible if it is (1) relevant to an issue other than the defendant's character, and (2) the incremental probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant." *United States v. Peters*, 283 F.3d 300, 312 (5th Cir. 2002).

With respect to substantial prejudice, the second prong of the *Beechum* test, the Court must make "a commonsense assessment of all the circumstances

surrounding the extrinsic offense." *Beechum*, 582 F.2d at 914. Probative value "must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference." *Id.* Other factors to be considered include "the need for the evidence, the overall similarity between the offenses . . . the amount of time which passed between the two offenses[,]" and any limiting instructions. *United States v. Sanchez*, 988 F.2d 1384, 1394 (5th Cir. 1993) (citation omitted); *see also United States v. Richards*, 204 F.3d 177, 199–201 (5th Cir. 2000) (citation omitted).

In order to be admissible against a defendant, all evidence the government attempts to introduce must be relevant to at least one of the offenses charged against him in the superseding indictment. Fed. R. Evid. 402. "Relevant evidence" is defined as that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id.* 401. The relevance of an extrinsic offense "is a function of its similarity to the offense charged," and similarity must be determined with respect to the particular issue to which the extrinsic offense is addressed. *Beechum*, 582 F.2d at 911. In any event, similar act evidence is relevant "only if the jury can reasonably conclude that the extrinsic act occurred and that the defendant was the actor." *United States v. Bailey*, 111 F.3d 1229, 1233 (5th Cir. 1997).[36]

---

[36] In making its relevance determination, the Court is not required to make a preliminary finding that an extrinsic act or offense in fact occurred. *Huddleston v. United States*, 485 U.S. 681, 688–89 (1988). The Court may instead admit extrinsic offense evidence under Federal Rule of Evidence 104(b), which requires the Court to "examine[ ] all the evidence in the case and decide[ ] whether the jury could

9

*i. Medicare Audits*

The government's notice states that it intends to offer evidence related to investigations by a third-party auditor hired by the government that examined Canon's billing submissions and determined that Canon had been overpaid by Medicare on several occasions between 2014 and 2017.[37] The government argues that this evidence is intrinsic to the crimes charged because it provides immediate context for the acts alleged in the indictment.[38] It also argues that, even if it is not intrinsic, this evidence should be admitted pursuant to Rule 404(b) because it "demonstrate[s] the scope of Akula's involvement in Canon's billing practices, his knowledge of Medicare billing requirements, and his knowledge that, at least as early as . . . 2015 [ ] Canon's submissions to Medicare were being scrutinized.[39] The government also argues that this evidence is relevant to Akula's motive, which was allegedly to unjustly enrich himself.[40]

Akula argues that the audit-related evidence is not intrinsic because it "is not a cog in a wheel of a larger criminal enterprise," nor is it part of "a single criminal

---

reasonably find the conditional fact . . . by a preponderance of the evidence." *Id.* at 690. The Court has broad discretion to control the order of proof at trial and may allow the government to introduce evidence concerning a similar act subject to a later assessment of whether sufficient evidence has been offered to permit the jury to make the requisite finding. *Id.* Only if the government ultimately fails to meet this "minimal standard of proof" must the Court instruct the jury to disregard the evidence that was conditionally admitted. *Id.*

[37] R. Doc. No. 243, at 2–5.
[38] *Id.* at 8.
[39] *Id.* at 8–9.
[40] R. Doc. No. 298, at 8 (arguing that "the audits would be admitted to establish Akula's motive, opportunity intent, preparation, plan, knowledge, absence of mistake, or lack of accident" (cleaned up)).

10

episode."[41] The majority of the audits happened prior to 2017, when the scheme to defraud Medicare allegedly began.[42] It therefore appears that the alleged overpayments were neither "inextricably intertwined" nor part of a "single criminal episode" nor "necessary preliminaries" to the crimes charged. *Coleman*, 78 F.3d at 156.

However, the Court finds that the audit-related evidence may nevertheless be admissible pursuant to Rule 404(b). Several appellate courts have affirmed the admission of audit-related evidence in fraud or theft prosecutions to show knowledge, intent, or absence of mistake. *United States v. Buehler*, 482 F. App'x 909, 909–10 (5th Cir. 2012) (per curiam) (affirming district court's decision to admit, in prosecution for theft or embezzlement from an employee pension plan, "evidence about a civil audit investigation of the plan begun by the Department of Labor . . . after it received a report that [the defendant] had withheld contributions from plan participants' paychecks but had not deposited the monies into the plan."); *United States v. Stokes*, 392 F. App'x 362, 366 (6th Cir. 2010) (affirming, in health care fraud prosecution, district court's decision to admit correspondence and audit notifications from insurance providers questioning the defendant's billing practices and referencing certain billing rules to show knowledge, intent, and absence of mistake); *United States v. Lach*, 50 F.3d 17 (9th Cir. 1995) (affirming, in prosecution for subscribing

---

[41] R. Doc. No. 296, at 2.
[42] *See* R. Doc. No. 1.

11

false income tax returns, district court's admission of evidence relating to an IRS audit of the defendant that took place six years prior to the charged crime).[43]

The audit notices demonstrate that Akula received warnings and guidance related to Canon's billing practices, and they therefore appear relevant to knowledge and intent to defraud. Because they are relevant to an issue other than the defendant's character, it appears that the audit evidence passes the first step of *Beechum*. *Peters*, 283 F.3d at 312.

As to substantial prejudice, the Court considers "the need for the evidence, the overall similarity between the offenses . . . the amount of time which passed between the two offenses[,]" and any limiting instructions. *Sanchez*, 988 F.2d at 1394. The government must prove that Akula acted knowingly and willfully with the intent to defraud a health care benefit program,[44] so evidence related to his state of mind is important.[45] *Id.* As Akula admits,[46] the extrinsic acts are similar to the charged offenses, as both relate to Canon's billing practices. *Id.* Moreover, the audits took place in the three years leading up to Akula's indictment, and some overlapped with the criminal prosecution. *Id.* The Court can mitigate any prejudice resulting from the admission of the audit letters with limiting instructions. *Id.*

---

[43] Notably, these cases all analyzed the audit conduct under Rule 404(b) and did not consider the previous audit evidence to be intrinsic.
[44] 5th Cir. Pattern Jury Instructions, 2.59 (2019).
[45] The government cites *United States v. Cockrell* for the proposition that where the defendant pleads guilty, the government's need for the evidence is established. However, the portion of *Cockrell* cited refers to the relevance prong of the *Beechum* test. 587 F.3d 674, 679 (5th Cir. 2009).
[46] R. Doc. No. 296, at 3.

12

As stated, it appears that the audits are relevant to an issue other than Akula's character and that "the incremental probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant." *Peters*, 283 F.3d at 312. However, the Court will defer a decision with respect to admissibility until trial as the Court will have a clearer understanding of these issues once the trial evidence unfolds.

        *ii.   Alleged Bullying of Witnesses*

The government seeks to introduce evidence related to a press release written by Physicians Against Abuse ("PAA"). The press release stated that the indictment in this matter relied on the testimony of a Canon employee who was denied a raise and "turned to the government to get [ ] money . . . by turning herself into a so-called 'whistleblower.'"[47] The government alleges that Akula distributed this press release to Canon employees.[48]

The government also seeks to introduce evidence that "after Medicaid terminated Canon's provider agreement following the indictment, Akula asked Canon employees to sign affidavits that made representations about certain Canon patients so Medicaid would reinstate the agreement," and that Akula fired an employee who refused to sign such an affidavit.[49]

The government does not argue that this evidence is intrinsic, just that it satisfies Rule 404(b). Akula argues that this evidence should be excluded because

---

[47] R. Doc. No. 243-6, at 1.
[48] R. Doc. No. 243, at 6.
[49] R. Doc. No. 243-8.

13

PAA, not Akula, was responsible for the press release, and that "there is no reason to suggest that the press release and the termination of the employee were anything except efforts to save a business under siege by the federal government."[50]

Several courts have found that a defendant's attempt to manipulate witness testimony is appropriately admitted to show consciousness of guilt. *United States v. Krauss*, No. 02-258, 2009 WL 1313296, at *5 (E.D. Pa. May 11, 2009) (collecting cases); *see also United States v. Barbee*, 524 F. App'x 15, 19 (4th Cir. 2013) ("[E]vidence of witness intimidation is admissible to prove consciousness of guilt and criminal intent under Rule 404(b), if the evidence (1) is related to the offense charged and (2) is reliable." (quotation and citation omitted)); *United States v. Mokol*, 646 F.3d 479, 483 (7th Cir. 2011) (finding that a witness' testimony that the defendant "stated that anyone who informed on him would 'end up in the ground' . . . fit[ ] comfortably within the widely recognized principle that a defendant's attempts to intimidate potential witnesses are probative of his consciousness of guilt" and was therefore admissible under 404(b)).

The press release was clearly related to the offenses charged in the indictment, as the press release specifically mentions the pending federal charges and one of the federal prosecutors.[51] Akula's alleged distribution of this press release to Canon

---

[50] R. Doc. No. 296, at 5.
[51] R. Doc. No. 243-6, at 1. Though Akula asserts that he was not responsible for the press release, he does not address or dispute the government's contention that he distributed the press release to Canon employees. The government reasserts this contention in its response to Akula's objections, and states that "witnesses will explain that the 'press release' was circulated to administrators at Canon" and "that the [PAA] board member worked closely with Akula after Akula was indicted." R.

14

employees arguably suggests an attempt to undermine or manipulate the witness' testimony. Because such efforts are relevant to a defendant's consciousness of guilt, this evidence may pass the first *Beechum* step. *Peters*, 283 F.3d at 312.

However, the same may not be true of the affidavit and termination notice. The notice of termination of the Canon employee states that the affidavit that Akula asked the employee to sign was "for the purpose of addressing [ ] in court" facts regarding Medicaid's termination of Canon's provider agreement, which Canon was "asking a federal judge to enjoin."[52] It is not clear who wrote the affidavit, and it appears to reference an unspecified civil proceeding. Though the termination notice was issued while the criminal case was already pending, it does not mention Akula's federal prosecution, and it states that the employee's failure to sign the affidavit was only one reason among "other reasons" for her termination. It is not clear to the Court that this evidence shows an attempt at witness manipulation, at least in regard to this criminal proceeding. The government has made a weak showing of the admissibility of this evidence pursuant to Rule 404(b),[53] but the Court will defer its decision on this issue until trial.

Examining the prejudice factors with regard to the press release, the government must prove that Akula acted knowingly and willfully with the intent to defraud, and any consciousness of guilt is therefore important information. *Sanchez*,

---

Doc. No. 298, at 8–9. The relevance of Akula's relationship with the PAA board member is unclear.

[52] R. Doc. No. 243-7.

[53] The affidavit and termination notice may be admissible for direct and cross-examination of the employee if the employee testifies at trial.

988 F.2d at 1394. Though less similar to the charged offenses than the audit-related evidence, the press release pertains to Akula's practices as owner of Canon, which in turn bears on whether he used his position at Canon to defraud Medicare. *Id.* The timing of the press release also weighs in favor of admission, because it was issued after indictment while this criminal case was pending. *Id.* The Court can mitigate any prejudice with limiting instructions. *Id.* Again, however, the Court will defer this issue until trial, when the Court will be in a better position to evaluate the evidence.

As to the affidavit and termination notice, the government's need for the evidence is unclear. The similarity between the acts is minimal, as the affidavit and termination notice relate to unspecified civil proceedings regarding Canon's Medicare provider agreement. *Id.* However, they were issued during the pendency of this criminal case. *Id.* As stated, prejudice can be mitigated with limiting instructions. However, again, the Court will defer decision on the admissibility of this evidence until trial.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Court's previous order and reasons is amended to defer ruling on the advice-of-counsel issue. In all other respects, it remains unchanged.

**IT IS FURTHER ORDERED** that, if Akula plans to assert the advice-of-counsel defense, he shall provide notice to the government no later than **AUGUST 18, 2023**.

**IT IS FURTHER ORDERED** that Akula's objections to the government's Rule 404(b) evidence are **DEFERRED** until trial.

New Orleans, Louisiana, August 7, 2023.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**