UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 21-98** |
| **SHIVA AKULA** | **SECTION I** |

### ORDER & REASONS

Before the Court is the government's supplemental brief concerning the admission of certain audit evidence pursuant to Federal Rule of Evidence 404(b).[1] Defendant Shiva Akula ("Akula") has filed a brief in response to the government's supplemental brief.[2] For the reasons that follow, the Court finds that the 2015 audit letter, including the portions Akula seeks to redact, and related testimony are admissible. The Court also determines that witnesses shall be permitted to discuss the 2017 audits, including their number and scope. With respect to any testimony concerning the results of the 2017 audits, the Court sustains Akula's objection without prejudice to the government's right to re-urge admission at trial should the evidence support reconsideration of the reasoning set forth herein. Finally, the Court defers its decision with respect to the appropriate jury instruction.

---

[1] R. Doc. No. 318.
[2] R. Doc. No. 319.

1

## I. BACKGROUND

Akula is charged with 23 counts of health care fraud in violation of 18 U.S.C. § 1347.[3] From February 2023 to June 2023, Akula represented himself in connection with these proceedings.[4] On June 23, 2023, Akula filed a motion to enroll counsel.[5] The Court granted that motion and, after briefing, granted Akula's motion to continue the trial, which was previously set to begin on July 10, 2023.[6] The trial is now set to begin on October 30, 2023.[7]

When the Court continued Akula's trial, it granted his newly enrolled counsel permission to file an opposition to the government's Rule 404(b) notice.[8] Akula then filed his opposition, arguing generally that evidence related to certain Medicare audits of Akula's company, Canon Hospice ("Canon"), was not intrinsic to the crimes charged and was inadmissible as "other bad acts" pursuant to Rule 404(b).[9] The Court agreed with Akula that the audits were extrinsic because the majority of the audits happened prior to 2017, when the scheme to defraud Medicare allegedly began.[10] However, the Court noted that the audit notices might nevertheless be admissible because they are "relevant to an issue other than Akula's character" and their "incremental probative value is not substantially outweighed by the danger of unfair

---

[3] *See generally* R. Doc. No. 1.
[4] *See* R. Doc. Nos. 120, 273.
[5] R. Doc. No. 264.
[6] R. Doc. No. 292.
[7] R. Doc. No. 293.
[8] *Id.*
[9] *See generally* R. Doc. No. 296.
[10] R. Doc. No. 300, at 10–11.

prejudice to the defendant."[11] Ultimately, the Court deferred its decision with respect to the admissibility of the audit-related evidence.[12]

At a pretrial conference held on September 27, 2023, the parties advised the Court that they would endeavor to enter a stipulation regarding the admissibility of the audits or portions of the audits.[13] The Court set a briefing schedule regarding this question in the event the parties were unable to reach a stipulation.[14] On October 6, 2023, the government filed its supplemental brief concerning admission of the audit evidence.[15] The government's brief explains that the parties "attempted to reach an agreement concerning the audit evidence" and sets forth the remaining disagreements.[16] First, Akula argues that certain redactions should be made to the 2015 audit letter.[17] Second, with respect to evidence concerning the 2017 audits, Akula objects to any mention of the number of audits, the number of patients audited, and any findings related to these audits.[18] Akula also requests a specific limiting instruction regarding the audit evidence.[19]

## II.  LAW & ANALYSIS

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion

---

[11] *Id.* at 13 (quoting *United States v. Peters*, 283 F.3d 300, 312 (5th Cir. 2002)).
[12] *Id.*
[13] See R. Doc. No. 312.
[14] *Id.*
[15] R. Doc. No. 318.
[16] *Id.* at 1; *see generally id.*
[17] R. Doc. No. 319, at 1–2.
[18] *Id.* at 2.
[19] *Id.*

3

the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2).

In order to determine whether "other acts" evidence is admissible, the Court must first determine whether the evidence is intrinsic or extrinsic to the charged crime. *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1999). "Other act" evidence is intrinsic when the evidence of the other act and evidence of the crime charged are "inextricably intertwined," or the other acts are part of a "single criminal episode" or were "necessary preliminaries" to the crime charged. *Id.* (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)).

If the "other acts" evidence is extrinsic, the evidence may nevertheless be admissible pursuant to Rule 404(b). In *United States v. Beechum*, the Fifth Circuit outlined a two-step test to determine the admissibility of extrinsic evidence or "other acts." 582 F.2d 898, 910 (5th Cir. 1978). "Other acts" include both criminal and noncriminal activity. *Id.* at 914 n.17. "Under *Beechum*, evidence of extrinsic offenses is admissible if it is (1) relevant to an issue other than the defendant's character, and (2) the incremental probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant." *United States v. Peters*, 283 F.3d 300, 312 (5th Cir. 2002).

With respect to the first prong of *Beechum*, the evidence must be relevant to an issue other than the defendant's character. 582 F.2d at 911. Evidence is relevant

4

if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401; *see also United States v. Cockrell*, 587 F.3d 674, 678 (2009) (explaining that Rule 404(b) evidence must be relevant to an issue other than the defendant's character, applying Rule 401's standard). The relevance of an extrinsic offense "is a function of its similarity to the offense charged," and similarity must be determined with respect to the particular issue to which the extrinsic offense is addressed. *Beechum*, 582 F.2d at 911.

With respect to substantial prejudice, the second prong of the *Beechum* test, the Court must make "a commonsense assessment of all the circumstances surrounding the extrinsic offense." *Id.* at 914. Probative value "must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference." *Id.* Other factors to be considered include "the need for the evidence, the overall similarity between the offenses . . . the amount of time which passed between the two offenses[,]" and any limiting instructions. *United States v. Sanchez*, 988 F.2d 1384, 1394 (5th Cir. 1993) (citation omitted); *see also United States v. Richards*, 204 F.3d 177, 199–201 (5th Cir. 2000) (citation omitted).

### a. August 2015 Audit Letter

Recognizing that the August 2015 audit letter "put Dr. Akula on notice of the alleged insufficiency of medical records[,]" Akula "has agreed not to object to a

5

redacted version of the audit letter laying out these alleged insufficiencies[.]"[20] The government opposes Akula's proposed redactions.[21]

Akula argues that "evidence of the percentage of the claims denied and the amount of money overpaid" must be excluded through redactions because it is unduly prejudicial.[22] Specifically, Akula seeks to redact the fourth paragraph on page 1 of the letter, which reads:

> On January 2, 2015, AdvanceMed sent a medical records request via Federal Express to 1221 South Clearview Parkway, Jefferson, Louisiana, 70121. AdvanceMed received and reviewed thirty claims. Thirty of thirty claims were denied or 100% of the reviewed claims failed to meet existing Medicare coverage policies and were denied. The medical review identified the following general findings:[23]

Following each requirement listed on the letter, the letter states: "Upon review, it was noted that this requirement was not met."[24] Akula seeks to redact this sentence each time it appears.

Akula also seeks to redact the fifth paragraph on page 2 of the letter, which reads:

> Trends identified by Medical Review include: Complete benefit dates were rarely included on any of the documentation. General inpatient (GIP) admissions were frequent, lengthy and often did not include sufficient documentation to determine if they were justified. Patients who are either documented as being on respite care or should be due to the circumstances are billed as GIP. The provider may be using GIP billing in order to avoid the five day limit associated with respite care.[25]

---

[20] R. Doc. No. 319, at 1.
[21] R. Doc. No. 318, at 2.
[22] R. Doc. No. 319, at 1.
[23] R. Doc. No. 318-1, at 1.
[24] *Id.* at 1–2.
[25] *Id.* at 2.

6

Finally, Akula seeks to redact the second paragraph on page 3 of the letter, which states:

> Based on the findings in this review, AdvanceMed has determined just cause in requesting an overpayment. As a result of our findings we have determined that you have been overpaid by Medicare in the amount of $383,107.26.[26]

According to Akula, "[i]t is impossible to litigate the legitimacy of these findings without the medical records[,]" which "pertain[] to deceased patients from 2014."[27] Akula has not maintained paper records related to these patients, and he argues that, since "the Government (Center for Medicare & Medicaid Services) was provided these records in 2015[,]" "[o]nly the Government knows where those records are now."[28] Akula therefore argues that "[i]t would be highly prejudicial for this Court to permit the government to introduce specific findings of fact without the records to support those findings[.]"[29]

The government argues that the relevant paragraphs are "highly probative because they demonstrate Akula's knowledge that there were serious problems with his billing, including for GIP, as well as Akula's financial motive for committing the charged conduct."[30] Particularly with respect to the paragraph regarding general inpatient ("GIP") billing, the government notes that "Counts 1 through 8 of the indictment charge Akula with the same type of misconduct related to GIP billing

---

[26] *Id.* at 3.
[27] R. Doc. No. 319, at 1.
[28] *Id.*
[29] *Id.* at 2.
[30] R. Doc. No. 318, at 4.

between April 2017 and August 2017."[31] According to the government, "Akula's decision to persist in billing the same way after the 2015 audit, including for GIP, shows his knowledge and intent, as well as absence of mistake and lack of accident."[32]

With respect to the paragraph on page 3—which states Medicare overpaid Canon $383,101.26 because of the inaccurate billing—the government contends that it "supports the government's theory as to financial motive to later commit the charged conduct" since "Akula knew that improperly billing Medicare could result in his being paid hundreds of thousands of dollars[.]"[33] The government states that "this paragraph supports the government's theory that the August 2015 audit should have been a major red flag that demanded immediate action by Akula to fix his billing practices," as the letter "was more than a mere suggestion that Akula consider best practices—it was a notice that Medicare could not reimburse Canon for more than $300,000."[34]

The government also explains that, in presenting evidence related to the August 2015 audit, it "will likely call one witness," the person who signed the audit letter, who will read and explain the letter to the jury.[35] The government "does not intend to have [any] witness testify about individual beneficiaries whose claims were the subject of the audit."[36] Further, the government "does not plan to argue that any

---

[31] *Id.*
[32] *Id.* at 5.
[33] *Id.*
[34] *Id.*
[35] *Id.* at 6.
[36] *Id.*

of the individual claims reviewed during the audit were fraudulent."[37] Accordingly, the government argues that a "high-level review of a five-page document will be highly probative to important issues such as Akula's knowledge, intent, absence of mistake, and lack of accident, and it will present a minimal risk of undue prejudice, particularly if it is accompanied by a jury instruction."[38]

In response to Akula's point that it would be impossible to litigate the legitimacy of the audit's findings without the underlying medical records, the government states that Akula has access to the same materials as the government.[39] The government also expressed its willingness to work with Akula's counsel to ensure Akula has access to any available patient records to the extent he does not presently have access to them.[40] The Court expects counsel to communicate with each other about the same.[41]

Upon review, the Court agrees with the government. As the Court found in its previous order, the 2015 audit letter is extrinsic and must be analyzed pursuant to Rule 404(b).[42] The letter is relevant under the first prong of *Beechum*. 582 F.2d at 911. The letter discusses billing issues similar to the billing issues alleged in the

---

[37] *Id.* at 7.
[38] *Id.* at 6 (citing *United States v. Juarez*, 866 F.3d 622, 629–30 (5th Cir. 2017)).
[39] *Id.*
[40] *Id.* at 6–7 n.4.
[41] The Court also notes that, on October 17, 2023, the government advised the Court and defense counsel by e-mail that patient charts for several patients whose claims were audited in 2015 were produced to the defense in two early discovery productions. The government offered to follow up with the defense to provide the control numbers for those produced documents.
[42] R. Doc. No. 300, at 10–13.

indictment and tends to show that Akula was on notice regarding those billing problems. The letter is therefore relevant to the issue of Akula's intent, knowledge, motive, and lack of mistake or accident. *See Cockrell*, 587 F.3d at 678 (2009).

Under the second prong of *Beechum*, the probative value of the portions of the audit letter Akula seeks to redact is not substantially outweighed by the danger of unfair prejudice. 582 F.2d at 911. With Akula's proposed redactions, the letter looks like what the government calls "a mere suggestion that Akula consider best practices."[43] In reality, the letter was a notice that Medicare could not reimburse Canon for more than $300,000 based on specific problems with billing in 100% of the claims reviewed—problems that persisted in Canon's billing practices as charged in the indictment. Absent that information, the jury would lack important context bearing directly on Akula's intent, knowledge, motive, and absence of mistake or accident. *See United States v. Stokes*, 392 F. App'x 362, 367 (6th Cir. 2010) (upholding admission of audit-related evidence in health care fraud prosecution where the "audit evidence demonstrated that [the defendant] received warnings and guidance regarding his billing practices" and his "decision to disregard the warnings and persist in his existing practices . . . tended to suggest that . . . his erroneous billings were not the product of an honest mistake"); *United States v. Lach*, 50 F.3d 17 (9th Cir. 1995) (affirming admission of evidence relating to an IRS audit of the defendant that took place six years prior to the charged crime in prosecution for subscribing

---

[43] R. Doc. No. 318, at 5.

false income tax returns where the audit was "sufficiently similar" to the present charge because both incidents resulted in underreporting of corporate income).

Further, as the government correctly argues, the statement regarding Medicare's $383,107.29 overpayment to Akula is probative of Akula's financial motive to later commit the charged conduct. *See United States v. Hill*, 643 F.3d 807, 843 (11th Cir. 2011) (noting that motive is "always relevant in a criminal case, even if it is not an element of the crime" and explaining that, "with financial crimes, the more money, the more motive") (quotations omitted). As the government puts it, "Akula knew that improperly billing Medicare could result in his being paid hundreds of thousands of dollars."[44] The fact that the letter notified Akula that Medicare could not reimburse Canon for over $300,000 also illustrates that he received a significant warning regarding his billing practices, not just minor guidance regarding small errors. This is highly probative of intent, knowledge, motive, and absence of mistake or accident.

To be clear, the 2015 letter—including the paragraphs Akula seeks to redact—will not be introduced as evidence that Akula's billing practices were in fact fraudulent. Rather, the government intends to introduce the letter to establish Akula's intent, knowledge, motive, and absence of mistake or accident. Accordingly, Akula need not rebut the *findings* of the audit with respect to individual patients in order to present his defense since the focus will be on the notice that Akula was provided, which will allegedly support the government's theory regarding intent,

---

[44] *Id.*

knowledge, motive, and absence of mistake or accident. Nothing in this order shall be construed to prevent Akula from attempting to undermine the audit through cross-examination.

As with all Rule 404(b) evidence, introducing the paragraphs in question may present a risk that the jury will "misuse the evidence to make improper character-related inferences." *Stokes*, 392 F. App'x at 367. However, that risk can be mitigated by an appropriate limiting instruction, and the Court presumes—as it must—that the jurors will follow their instructions. *See United States v. Patino-Prado*, 533 F.3d 304, 313 (5th Cir. 2008) (explaining that this presumption should only be abandoned "when there 'is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect is devastating'") (quoting *United States v. Barksdale-Contreras*, 972 F.2d 111, 116 (5th Cir. 1992)). Accordingly, the Court specifically finds that the incremental probative value of the 2015 audit letter, including the portions Akula seeks to redact, is not substantially outweighed by the danger of unfair prejudice. The August 2015 audit letter is admissible in its entirety as Rule 404(b) evidence.

### b. February and August 2017 Audits

With respect to the 2017 audits, Akula states that he was not made aware of the results of those audits until 2018, after the allegations in the indictment. Nevertheless, since he "recognizes that it would be cumbersome for the Government to examine witnesses without some mention that they were responding to an audit in 2017[,]" he "does not object to limited evidence that employees were responding to an

audit in 2017."[45] Akula does object to "mention of the number of audits, the number of patients audited, and any findings related to those audits."[46]

The government argues that "[t]he scope of the audits and the number of patients whose claims were audited . . . underscore Akula's knowledge that something was wrong."[47] The government also contends that, since witnesses aware of the results of the audits will be called to testify, "they should be permitted to testify generally about the results to complete the story for the jury."[48] According to the government, "[s]uch high-level testimony concerning the February 2017 and August 2017 audits is intrinsic to the charged scheme to defraud, and it is also admissible under Rule 404(b)."[49]

The Court's previous finding that the audit-related evidence was extrinsic was based on the fact that "the majority of the audits happened prior to 2017, when the scheme to defraud Medicare allegedly began."[50] However, the 2017 audits were happening around the same time as the alleged scheme to defraud Medicare. Accordingly, the Court finds that evidence regarding the number and scope of the 2017 audits is intrinsic because it is "inextricably intertwined" with evidence of the crime charged. This evidence is admissible "to complete the story of the crime by proving the immediate context of events in time and place and to evaluate all of the

---

[45] R. Doc. No. 319, at 2.
[46] *Id.*
[47] R. Doc. No. 318, at 7.
[48] *Id.*
[49] *Id.*
[50] R. Doc. No. 300, at 11.

circumstances under which the defendant acted." *United States v. Girod*, 646 F.3d 304, 319 (5th Cir. 2011) (cleaned up). The Court specifically finds that the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice.

However, the government's argument that witnesses should be able to testify about the *results* of the 2017 audits "to complete the story for the jury" is different. Unlike evidence about the scope and number of the 2017 audits, the results of those audits appear to be extrinsic as they were not made available to Akula until 2018 and are not part of the story of the events taking place at Canon during the timeframe listed in the indictment.

Courts have allowed *intrinsic* other acts testimony "to complete the story" of the crime at issue in the trial. *See, e.g.*, *United States v. Gurrola*, 898 F.3d 524, 536–37 (5th Cir. 2018) (upholding introduction of intrinsic testimony related to a previous kidnapping that "served to complete the story" of the crime of the trial); *United States v. Age*, No. 16-32, 2021 WL 6135570, *6 (E.D. La. Dec. 29, 2021) (Ashe, J.) (explaining that evidence of certain insurance schemes was intrinsic because it "complete[d] the story of the crime charged"). Here, however, the results of those audits appear to be extrinsic and there is no apparent need for the jury to hear the "complete story" regarding the 2017 audits. The claims and patients included in those audits are not part of the indictment's charges. In fact, Akula did not receive the results until after the allegations in the indictment. Further, as discussed in the next section, the government has stated that it does not presently intend to introduce the audit result

14

letters themselves. Pursuant to *Beechum*, probative value "must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence[.]" 582 F.2d at 914. The Court concludes that it will exclude evidence regarding the results of the 2017 audit, reserving the government's right to re-urge admission at trial should the evidence support reconsideration of the reasoning set forth herein.

### c. February 2018 Audit Result Letters

The government has stated that, "[a]t this time, [it] does not intend to introduce [the audit result] letters, which were not sent until February 2018."[51] Accordingly, the Court will not consider the admissibility of those letters.

### d. Jury Instruction

Regardless of the Court's rulings on the above-mentioned questions, Akula requests a limiting instruction be given to the jury "both during the trial as well as at the end[.]"[52] The government agrees that "a jury instruction will likely be necessary to explain to the jury the limited use of the audit evidence."[53] However, while the government believes the Fifth Circuit Pattern Jury Instruction for "Similar Acts" will be sufficient,[54] Akula requests a separate, specific jury instruction.[55]

The Fifth Circuit Pattern Jury Instruction for "Similar Acts" states:

> You have heard evidence of acts of the defendant which may be similar to those charged in the indictment, but which were committed

---

[51] R. Doc. No. 318, at 2.
[52] R. Doc. No. 319, at 2.
[53] R. Doc. No. 318, at 3.
[54] *Id.*
[55] R. Doc. No. 318, at 2.

on other occasions. You must not consider any of this evidence in deciding if the defendant committed the acts charged in the indictment. However, you may consider this evidence for other, very limited, purposes.

If you find beyond a reasonable doubt from other evidence in this case that the defendant did commit the acts charged in the indictment, then you may consider evidence of the similar acts allegedly committed on other occasions to determine:

Whether the defendant had the state of mind or intent necessary to commit the crime[s] charged in the indictment;

or

Whether the defendant had a motive or the opportunity to commit the acts charged in the indictment;

or

Whether the defendant acted according to a plan or in preparation for commission of a crime;

or

Whether the defendant committed the acts for which he is on trial by accident or mistake.

These are the limited purposes for which any evidence of other similar acts may be considered.[56]

By contrast, Akula requests a jury instruction that states: "There is no evidence or allegation of fraud related to the prior audits you have heard about. You may only consider the 2015 audit if you believe it relates to the defendant's knowledge or absence of mistake. You may not consider it for any other purpose."[57]

It appears the pattern jury instruction sufficiently advises the jury of the law that must be applied. However, the Court will defer ruling on the limiting instruction issue until trial. Should he wish to do so, counsel may re-urge his proposed jury instruction at the close of testimony.

### III. CONCLUSION

For the foregoing reasons,

---

[56] 5th Cir. Pattern Jury Instructions (Criminal) § 1.32 (2019).
[57] R. Doc. No. 319, at 2.

**IT IS ORDERED** that Akula's objections to the portions of the 2015 audit letter he seeks to redact are **OVERRULED**.

**IT IS FURTHER ORDERED** that Akula's objections to any mention of the number of audits to which Canon employees were responding in 2017 and the number of patients audited are **OVERRULED**. However, Akula's objection to any mention of the ultimate findings or results of those audits is **SUSTAINED** without prejudice to the government's right to re-urge admission at trial should the evidence support reconsideration of the reasoning set forth herein.

The Court's decision with respect to a limiting instruction for "similar acts" in is also **DEFERRED** until trial. Should he wish to do so, Akula's counsel may re-urge his proposed jury instruction at the close of testimony.

New Orleans, Louisiana, October 17, 2023.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**